IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Katherine R., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:21-cv-50162 |
| v. | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Carolyn Colvin, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Katherine R. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying her applications for disability insurance benefits and supplemental security income.[2] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

    In May 2018, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on May 26, 2018, because of chronic obstructive pulmonary disease ("COPD"), bipolar disorder, kidney disease, anemia, and issues with her left leg that included a water sac that was under observation. R. 256. Plaintiff was 61 years old on her alleged onset date. Plaintiff's date last insured was December 31, 2022. R. 17.

    Following a hearing, an administrative law judge ("ALJ") issued a decision in November 2020, finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. R. 16–31. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; bursitis and tendinosis of the left hip; COPD; and morbid obesity. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC")

---

[1] Martin O'Malley resigned as Commissioner of the Social Security Administration on November 29, 2024, and Carolyn Colvin has taken over as Acting Commissioner. Carolyn Colvin is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

1

to perform light work with certain restrictions. The ALJ determined that Plaintiff could perform her past relevant work as a cashier as actually and generally performed.

After the Appeals Council denied Plaintiff's request for review on February 16, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); s*ee also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## III. Discussion

Plaintiff argues that a remand is required because the ALJ: (1) failed to identify the evidence that supported her RFC determination and failed to include specific limitations in the RFC to address her fatigue and use of a cane or walker; (2) improperly discounted the opinion of her treating physician; and (3) improperly evaluated her subjective symptoms.[3] As detailed below, the Court finds that the ALJ's decision is supported by substantial evidence.

### A. RFC

Plaintiff begins by arguing that the ALJ erred because she failed to identify the evidence that supported her RFC determination. In support, Plaintiff argues that because the ALJ rejected all the medical opinion evidence, "the ALJ was faced with an evidentiary deficit that she could not

---

[3] In her opening brief, Plaintiff also argued that the Commissioner's appointment violates the separation of powers. Pl.'s Mt. at 14, Dkt. 15. However, Plaintiff withdrew that argument in her reply. Pl.'s Reply at 15, Dkt. 21.

2

fill with her own lay medical speculation." Pl.'s Mt. at 4, Dkt. 15. Plaintiff further argues that because the ALJ similarly rejected her subjective symptoms, "the ALJ was left only with objective medical evidence, which she was unqualified to independently review." *Id.* at 5, Dkt. 15. This Court disagrees with Plaintiff's characterization of the ALJ's decision and finds that the ALJ reasonably formulated Plaintiff's RFC.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ said enough to ensure that she considered the totality of Plaintiff's limitations in formulating the RFC. Despite Plaintiff's argument to the contrary, this is not a case where the ALJ rejected all the opinion evidence along with Plaintiff's allegations and determined the RFC by independently evaluating the significance of particular medical findings. The state agency reviewing physicians reviewed all the objective evidence relating to her hip and back impairments that Plaintiff points to in support of a more restrictive RFC and still found Plaintiff capable of performing medium exertional work. The state agency physicians explained that they limited Plaintiff to medium work with some postural limitations due to Plaintiff's left hip bursitis, small fluid filled cleft, and mild tendinosis. R. 105–06, 136–37. The state agency physicians found the severity of Plaintiff's functional limitations not fully supported by the medical evidence, noting that "[w]hile bursitis is painful, this is a treatable condition." R. 106, 138. Although not pointed out by Plaintiff, the state agency physician on reconsideration also reviewed a May 2019 consultative x-ray, which revealed that Plaintiff's left knee and right hip were "normal." R. 132.

The ALJ acknowledged that the state agency physicians opined that Plaintiff would be limited to medium work, which was supported by a review of the medical evidence through the date of their decisions. Nevertheless, the ALJ found the state agency physicians' opinions "not fully persuasive" because their recommendation for medium work was inconsistent with Plaintiff's treatment notes and testimony that they were unable to review, which detailed Plaintiff's left hip and back impairments. R. 29. In finding the state agency physicians' opinions not fully persuasive, the ALJ did not completely reject their opinions or their evaluation of the objective medical evidence when determining the RFC as Plaintiff suggests. *See, e.g., McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding "no evidentiary deficit" where the ALJ partially relies on agency consultants' opinions but incorporates additional limitations to account for a claimant's subjective symptoms). Instead, the ALJ partially relied on the state agency physicians' opinions when determining that Plaintiff remained capable of performing light exertional work with additional postural limitations based on Plaintiff's statements and medical records indicating that she continued to experience left leg and some back pain following her January 2017 fall. It is entirely permissible for an ALJ to reduce a state agency physician's RFC to account for additional limitations. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual

3

functional capacity recommended by the state agency physicians ... based on his independent review of the full evidentiary record").

Similarly, the ALJ did not completely reject Plaintiff's subjective allegations and instead found them "not *entirely* consistent" with the evidence in the record. R. 25 (emphasis added). The ALJ specifically credited Plaintiff's testimony when finding a more restrictive RFC warranted than the RFC proposed by the state agency physician. *See* R. 29.

The only other medical opinion in the record addressing Plaintiff's physical functional limitations is from her primary care physician, Dr. Lisa Glosson. Dr. Glosson opined that Plaintiff was limited to less than sedentary work. However, the ALJ found her opinion "not fully persuasive" because the extent of the limitations were not entirely supported by explanation or her treatment notes and were inconsistent with the evidence in the record, including some of Plaintiff's testimony. R. 30.

Accordingly, the ALJ formulated the RFC by determining which limitations were supported and necessary after weighing all the evidence in the record. Nevertheless, Plaintiff argues that the objective evidence in the record supports a more restrictive RFC. Plaintiff points to a January 2017 x-ray of her left leg, a June 2018 MRI of her left hip, a June 2018 orthopedic evaluation, and a September 2018 consultative examination. Pl.'s Mt. at 5, Dkt. 15. Plaintiff highlights certain findings from this evidence and argues it was "[a]bsent from the ALJ's discussion of [Plaintiff's] medical history." Pl.'s Reply at 4, Dkt. 21. Contrary to Plaintiff's argument, the ALJ specifically addressed this objective evidence in her decision but found that it did not support the full extent of Plaintiff's disabling limitations.

The ALJ addressed the January 13, 2017 x-ray of Plaintiff's left leg, which was taken following a fall and an emergency room visit. Although this x-ray was taken more than four months before the alleged onset date, Plaintiff testified that she was unable to work because she still suffered from left leg pain resulting from this fall. R. 65. Plaintiff's x-ray revealed no fractures but identified "slight" bilateral hip degenerative changes and lower lumbar degenerative changes. R. 25 (citing R. 397). However, as the ALJ noted, although Plaintiff's thigh and left hip were tender on examination, Plaintiff did not report back pain. R. 25 (citing R. 394). The ALJ also noted that the emergency room doctor did not identify "any serious or significant injury" and discharged Plaintiff with a walker for ambulation and directed Plaintiff to follow up with her primary care physician. R. 25 (citing R. 395–96). Plaintiff testified that she was unable to take pain medication because of her kidney disease, so she iced her leg while she was bedridden for four weeks. R. 57–58. Plaintiff testified that ice and Bengay helped her pain but were only a temporary fix. R. 67.

Plaintiff followed up with Dr. Glosson in May 2018, reporting pain in her left hip and thigh that persisted since her fall. R. 488. Associated symptoms included decreased mobility and a limp, but Plaintiff did not report back pain. R. 488–89. Dr. Glosson ordered an MRI of Plaintiff's left hip. R. 490.

The ALJ stated that Plaintiff's June 1, 2018 MRI revealed a small fluid filled cleft, mild trochanteric bursitis, mild gluteus tendinosis, and mild tendinosis of the conjoint tendon with a small amount of adjacent fluid. R. 401. Plaintiff makes no mention of the mild nature of these

4

findings. Nevertheless, the ALJ stated that "[d]espite the consistent descriptors of mild throughout, the undersigned notes that this description of severity does not necessarily reflect particular limitations, especially in light of the ongoing issue of certain medication prohibitions." R. 25. Accordingly, the ALJ next addressed Plaintiff's orthopedic evaluation and review of her MRI.

On June 20, 2018, Plaintiff was evaluated by orthopedic specialist Dr. Warren Jablonsky for left hip and leg pain. R. 407. As the ALJ stated, Plaintiff reported that since her January 2017 injury her pain had worsened, reporting a pain level of 10/10. R. 25 (citing R. 407). Plaintiff did occasional icing but despite leg pain for almost a year and a half she had "not really sought any additional attention." R. 25 (citing R. 407). Plaintiff points to her examination, which showed some tenderness in both her hips and hamstrings and significant tenderness along both her iliotibial bands, with her left side being more tender than her right. Dr. Jablonsky found that Plaintiff showed evidence of hip bursitis, iliotibial band syndrome, and gluteal tendinosis. However, what the ALJ also pointed out was that Plaintiff's passive range of motion in both hips was "normal and without pain," she had a negative straight leg raise, and grossly normal sensation. R. 25 (citing R. 407). Dr. Jablonsky referred Plaintiff to physical therapy, recommended aggressive icing and supportive shoes, and for Plaintiff to return for a reevaluation in five weeks, noting Plaintiff's restriction in taking anti-inflammatory medicines due to her kidney disease. R. 25 (citing R. 408).

However, as the ALJ noted, Plaintiff testified that she did not go to physical therapy because she joined a gym and thought physical therapy would be the same thing as exercise. R. 24; *see also* R. 63. Plaintiff also testified that she did not return to Dr. Jablonsky because his only recommendation was that she exercise. *Id.* Plaintiff did not see any other specialists. *Id.*

On September 19, 2018, Plaintiff underwent a consultative examination with Therese Lucietto-Sieradzki, M.D. Like Plaintiff, the ALJ noted that the examination revealed knee crepitus, impaired balance, antalgic gait, cervical, lumbar, left hip, and left knee range of motion that were reduced, and that Plaintiff had severe difficulty tandem walking, walking on heels and toes, and hopping on one leg. R. 26 (citing R. 427–32). However, the ALJ also noted that Plaintiff reported that she could stand for three hours at a time and could sit for "extended periods of time but has pain in her right hip when she goes to stand up." R. 26 (citing R. 427). The ALJ also noted that Plaintiff's examination revealed normal reflexes and normal movement in all extremities. Dr. Lucietto-Sieradzki assessed Plaintiff with COPD, bursitis of the left hip, and bipolar disorder. Despite identifying some abnormalities in her knee and lumbar spine, the ALJ noted that Plaintiff was not assessed with any back or knee impairments. R. 26, 28. Moreover, as stated above, Plaintiff's May 2019 consultative x-ray revealed that Plaintiff's left knee and right hip were "normal." R. 447.

The ALJ noted that shortly after her consultative examination, Plaintiff saw Dr. Glosson for pain in her left hip and thigh and pain in her right leg after sitting. R. 26 (citing R. 491). Although Plaintiff's symptoms included fatigue, gait disturbance, back pain, and decreased mobility, Plaintiff's examination was largely normal. However, the ALJ noted that the examination did not detail the extent of what was tested. Dr. Glosson assessed Plaintiff with left hip pain, radicular pain of the right lower extremity, and unspecific back pain. Dr. Glosson did not provide a treatment plan for Plaintiff's back pain. As to Plaintiff's left hip pain, Dr. Glosson reviewed the June 2018 MRI and Dr. Jablonsky's evaluation and referred Plaintiff to water therapy. Dr. Glosson

also ordered an MRI of Plaintiff's lumbar spine to evaluate her right leg pain. However, the ALJ noted that although Plaintiff received two referrals from two of her physicians for physical therapy, Plaintiff did not attend. R. 26, 28. Plaintiff also did not complete a lumbar MRI, but her May 2019 consultative x-ray revealed that her right hip was "normal." R. 447.

In light of the ALJ's consideration of all the objective evidence that Plaintiff points to in support, it is unclear how Plaintiff can fault the ALJ for a "selective recitation of evidence." Pl.'s Reply at 2, Dkt. 21. Although Plaintiff argues that the ALJ should have better explained how these various objective findings impacted specific RFC limitations, Plaintiff spends a considerable amount of her argument conflating these objective medical findings with limitations that she argues "suggested" that Plaintiff was more limited in her ability to stand, walk, and sit. Pl.'s Mt. at 5, Dkt. 15. However, Plaintiff points to no evidence, apart from Dr. Glosson's opinion and Plaintiff's subjective complaints which as discussed below the ALJ reasonably discounted, to support her speculation that the specific objective findings caused any limitations greater than those in the RFC. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (unpublished) (holding that the claimant must "establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work").

Instead, the ALJ weighed the conflicting evidence and concluded, consistent with the state agency physicians' evaluation, that the objective findings did not reflect the same level of functional limitations as Plaintiff alleged. Because the medical records, including Dr. Glosson's rather limited examination findings and Plaintiff's failure to follow through with her doctors' recommended course of treatment for her diagnosed impairments, do not indicate that Plaintiff required greater functional limitations, substantial evidence supports the ALJ's RFC determination.

Lastly, Plaintiff takes issue with the ALJ's failure to include specific limitations in the RFC to address her fatigue and need for a cane or walker to ambulate. However, Plaintiff has not shown that the ALJ erred by failing to include these additional limitations.

As it relates to Plaintiff's allegations of fatigue, Plaintiff argues that the ALJ should have included limitations in her RFC for extra breaks or naps. It is undisputed that Plaintiff complained of fatigue to her medical providers, and the ALJ acknowledged this evidence throughout her decision, noting Plaintiff's inconsistent reports of fatigue. *See, e.g.*, R. 27. Nevertheless, Plaintiff points to no medical source that found Plaintiff's fatigue required extra breaks or naps. Although Dr. Glosson opined that Plaintiff required breaks every two hours, the symptoms Dr. Glosson identified as the cause for such breaks were muscular aches, and nerve pain/radiculopathy, not fatigue. R. 452. Even if the breaks were attributed to fatigue, the ALJ reasonably determined that Dr. Glosson's limitation to breaks every two hours was not in addition to typical breaks throughout a normal workday. R. 29. As to naps, Plaintiff points to no evidence in the record, including her own testimony, that any of her impairments required the need for a nap. The ALJ only needed to include limitations in the RFC that are supported by the medical record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *Outlaw v. Astrue*, 412 Fed. App'x 894, 898 (7th Cir. 2011) (unpublished) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible."). Accordingly, Plaintiff

has not shown that the ALJ erred by failing to include a limitation for extra breaks or naps related to her reports of fatigue.

As to Plaintiff's use of a cane or walker for ambulation, Plaintiff argues that the ALJ should have included her need for an assistive device in the RFC due to her leg pain. In support, Plaintiff cites to the same objective evidence identified above to argue that Plaintiff "reasonably suffered considerable pain when she ambulated and that ambulation, generally, was difficult and could have been aided by the use of a cane or of a walker." Pl.'s Mt. at 8, Dkt. 15. But as stated above, Plaintiff must establish not just the existence of her conditions but evidence that these conditions support specific limitations affecting her capacity to work. *See Weaver*, 746 F. App'x at 579. Plaintiff has not made that showing here.

In Plaintiff's function reports and in her testimony, she stated that she used both a cane and a walker. R. 274, 300, 324. Plaintiff was discharged from the emergency room following her January 2017 leg injury with a walker "to aid with ambulation." R. 396. Plaintiff testified that she used a walker to go to the bathroom, to get out of bed, and to do chores around the house, but otherwise used a cane for balance. R. 51, 64–66, 72. Although at the time of the hearing Plaintiff was working part-time as a cashier, she testified that she did not use her cane at work and instead leaned on the counter for balance. R. 51, 65. Plaintiff testified that she used a cane almost every time she saw Dr. Glosson and when she was evaluated by Dr. Jablonsky. R. 64–65.

Although the ALJ acknowledged Plaintiff's reported use of a cane and walker, the ALJ concluded that "while the record supports that a walker was prescribed long before the alleged onset date, there is little evidence to suggest an ongoing need for a walker, or other assistive device." R. 28. As the ALJ stated, other than Plaintiff's statements, the only direct reference to Plaintiff's use of a cane or walker is from Dr. Glosson's March 2019 opinion. R. 27 (citing R. 452). However, Dr. Glosson indicated only that Plaintiff "occasionally" uses a walker when walking to the mailbox and made no mention of Plaintiff's use of or need for a cane. *Id.* Moreover, the ALJ reasonably found that Dr. Glosson's reference to Plaintiff's occasional use of a walker was based on Plaintiff's self-reports rather than an objective need for a walker. R. 29–30; *see Richmond v. Chater*, 94 F.3d 647, at *7 n.9 (7th Cir. 1996) (unpublished) ("[Claimant's] personal decision to use a cane does not necessarily mean that he could not walk without one.").

The ALJ also noted that Dr. Jablonsky made no mention of an assistive device "either as an observation or a medical recommendation." R. 28. Even if Plaintiff's physicians would not necessarily identify Plaintiff's use of a cane or walker at every visit, her physicians also never opined that Plaintiff's use of a cane or walker was necessary for ambulation or balance. The ALJ also considered that there had not been many specific assessments of Plaintiff's functioning, such as gait and strength. R. 27. Although Plaintiff's antalgic gait was noted in May and September 2018 and March 2019, Plaintiff's most recent annual examination with Dr. Glosson in September 2020 made no mention of her gait or any other symptom other than a rash. R. 20, 27–28.

Accordingly, the ALJ did not ignore evidence relating to Plaintiff's cane and walker use. Rather, the ALJ considered Plaintiff's reported use but explained why the medical evidence in the record did not support the need for an assistive device in Plaintiff's RFC. As such, the ALJ properly

7

weighed the conflicting evidence and did not err by failing to include the use of a cane or walker in the RFC.

For all these reasons, Plaintiff's arguments concerning the RFC amount to nothing more than a disagreement with the way the ALJ weighed the evidence, which is not a ground for remand. *See Bakke*, 62 F.4th at 1070 ("Where the ALJ clearly notes all evidence–that which supports his conclusion and that which undermines it–we cannot replace his judgment with ours."). The Court finds that the ALJ's decision reflects a thorough evaluation of all the objective and other evidence in the record, and the ALJ provided a sufficient explanation for ultimately finding the evidence supported an RFC for a limited range of light work.

**B. Treating Physician Opinion**

Plaintiff also argues that the ALJ erred in discounting Dr. Glosson's opinion because the ALJ did not consider objective medical evidence "that was entirely consistent with the limitations that Dr. Glosson proposed." Pl.'s Mt. at 10, Dkt. 15. However, the objective evidence that Plaintiff cites to is the same objective evidence that was addressed above. The ALJ considered this evidence and reasonably discounted Dr. Glosson's opinion as inconsistent. As set forth below, the Court finds no error in the ALJ's evaluation of Dr. Glosson's opinion.

Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to evaluate Dr. Glosson's opinion under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ evaluates the persuasiveness of all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's medical opinions, and as a result, an ALJ must discuss how she considered those factors. 20 C.F.R. § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For an opinion to be consistent, it must be consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*.

On March 12, 2019, Dr. Glosson filled out an RFC questionnaire. R. 451. Dr. Glosson identified Plaintiff's diagnoses as right lower extremity radicular pain, bipolar depression, chronic kidney disease, hypertension, and COPD. R. 451. Plaintiff's symptoms included constant left leg pain and dyspnea on exertion. In the portion of the form that asked Dr. Glosson to "Identify the clinical findings and objective signs," she wrote slow gait and decreased range of motion of the hips. R. 451. Dr. Glosson found that Plaintiff was unable to walk any distance without rest or

severe pain, could sit for only 15 minutes at a time and stand 2 hours at a time. She further found that Plaintiff could sit for less than 2 hours and stand/walk about 2 hours total in an 8-hour workday with normal breaks. R. 452. Plaintiff needed to change positions from standing to sitting every 60 minutes and needed unscheduled breaks every 2 hours for 15 minutes due to muscular aches and nerve pain/radiculopathy. Dr. Glosson noted that Plaintiff occasionally used a walker while walking to the mailbox. Dr. Glosson found that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift more than 20 pounds.

The ALJ found Dr. Glosson's opinion "not fully persuasive" because the extent of the limitations were not entirely supported by explanation or her treatment notes and were inconsistent with the evidence in the record, including some of Plaintiff's testimony. R. 29–30. The ALJ properly evaluated the regulatory factors in discounting Dr. Glosson's opinion that Plaintiff suffered severely limiting impairments because Dr. Glosson did not provide references in the record to support her opinion. Even examining Dr. Glosson's treatment notes, the ALJ found consistent records showing normal findings, including Plaintiff' most recent September 2020 annual examination where Plaintiff's only symptom was a rash. R. 20, 27 (citing R. 468). The ALJ also noted that Dr. Glosson did not provide many specific assessments of Plaintiff's functioning. *See* 20 C.F.R. § 404.1520c(c)(1) (providing that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be").

The ALJ also identified evidence in the record that was inconsistent with Dr. Glosson's opinions, including Dr. Jablonsky's evaluation showing normal passive range of motion without pain and Plaintiff's June 2018 MRI showing mild hip findings. The ALJ pointed out that Dr. Glosson's limitation that Plaintiff could only stand 2 hours total was inconsistent with Plaintiff's testimony that she stands for 2 hours at a time at her current job before taking a 15-minute break. Although Plaintiff's work was part-time and she indicated that she leaned on the counter for support, the ALJ was still entitled to consider this evidence when evaluating the consistency of Dr. Glosson's opinion with the other evidence in the record. Additionally, even though Dr. Glosson limited Plaintiff to 15 minutes of sitting and found her unable to walk without pain, Plaintiff testified that she could sit for 30 minutes and walk half a block and reported to the consultative examiner that she could stand for three hours and sit for "extended periods of time." R. 427. Plaintiff does not dispute the accuracy of the evidence the ALJ relied on to discount Dr. Glosson's opinion.

Instead, Plaintiff points to the same set of objective findings discussed above to argue that degenerative changes in her lumbar spine, reduced range of motion, difficulty ambulating, and tenderness in her left hip and thigh are consistent with limiting Plaintiff to standing and walking only 2 hours in an 8-hour workday. However, the ALJ found that Plaintiff's lumbar impairment was not well-defined and despite some lumbar spondylosis noted in the June 2018 MRI, Plaintiff did not consistently report back pain and there was no lumbar diagnosis until Dr. Glosson diagnosed Plaintiff with lumbar radiculopathy at her March 2019 visit. R. 498. However, Plaintiff never went for the lumbar MRI that Dr. Glosson ordered back in September 2018. The ALJ also noted that Plaintiff's hip findings were generally described as mild and that Plaintiff was referred to physical therapy more than once to help with her hip pain, but she declined. Moreover, the ALJ found that although Plaintiff did have a reduced range of motion and difficulty ambulating at times,

9

it was not consistent throughout the record and such findings were absent from Plaintiff's most recent examination in September 2020. The ALJ was entitled to give Dr. Glosson's opinion less weight because it was not fully supported or explained by the objective medical evidence. *See, e.g., Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010).

Plaintiff next argues that her hip bursitis and tendinosis are consistent with only occasionally lifting 10 pounds. But as the ALJ found, Dr. Glosson's lifting limitations are not explained or reflected elsewhere in the records. R. 29. The ALJ noted that there had not been many specific assessments of Plaintiff's functioning, such as strength. R. 27. Plaintiff relies on the mild MRI findings for her hip to support Dr. Glosson's limitations but fails to point to any objective assessment by Dr. Glosson to support the lifting limitations. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints.").

Plaintiff also argues that knee crepitus, tenderness in her hips and legs, and antalgic gait are consistent with a need to alternate positions and take unscheduled breaks. The ALJ noted that although knee crepitus was identified by the consultative examiner, Plaintiff was not assessed with any knee impairment. R. 26, 28. Moreover, as stated above, Plaintiff's May 2019 consultative x-ray revealed that Plaintiff's left knee was "normal." R. 447. The ALJ also noted that Plaintiff's hip findings were generally described as mild, and her antalgic gait was not consistently reported throughout the record nor was gait and strength specifically assessed by Dr. Glosson. R. 27, 29.

For all these reasons, Plaintiff has not shown that the ALJ erred in discounting Dr. Glosson's opinion.

**C. Subjective Symptoms**

Finally, Plaintiff argues that the ALJ's analysis of her subjective symptoms is insufficient because the ALJ failed to explain how she considered her activities of daily living. However, Plaintiff has not shown that the ALJ's analysis is patently wrong.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); Social Security Ruling 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation. While evaluating Plaintiff's subjective symptoms, the ALJ discussed Plaintiff's course of treatment and concluded that although Plaintiff complained of hip and leg

10

pain since her January 2017 fall, Plaintiff refused two referrals to physical therapy and never went for a lumbar MRI when she complained of right leg issues.

An "ALJ may deem an individual's statements less credible if the medical reports or records show that the individual is not following the treatment as prescribed." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The regulations provide that "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. [The ALJ] will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling 16-3p, 2016 WL 1119029, at *8. Here, Plaintiff declined to pursue physical therapy because she believed that it was the same as exercising. Accordingly, the ALJ did not err in finding that this evidence suggested that Plaintiff's hip and leg pain were not as debilitating as she asserted. *See Imse v. Berryhill*, 752 Fed. App'x 358, 362 (7th Cir. 2018) (unpublished) ("The ALJ reasonably considered the impact of Imse's noncompliance when assessing the limiting effects of her spinal impairment; Imse declined two doctors' recommendations for physical therapy, and when she finally did seek treatment, she failed to follow through."). Even the state agency physicians noted that Plaintiff's bursitis "is a treatable condition." R. 106, 138. Accordingly, the ALJ provided a valid reason to discount Plaintiff's symptoms.

Nevertheless, Plaintiff argues that the ALJ's subjective symptoms evaluation is insufficient because the ALJ failed to explain how she could sustain full-time employment when she took frequent breaks when performing household chores, her leg pain made dressing difficult and prevented her from riding her bike, and she would begin to limp if she shopped for longer than 30 minutes.

However, the ALJ acknowledged Plaintiff's limitations and did not completely disregard her complaints of pain or compare her activities to full-time work. The ALJ considered Plaintiff's activities, along with the medical evidence and Plaintiff's course of treatment when evaluating her subjective symptoms. The ALJ specifically credited Plaintiff's testimony when further restricting her to a reduced range of light work. That Plaintiff believes the ALJ should have weighed the factors differently when evaluating her subjective symptoms, without more, is not grounds for reversal. *See, e.g., Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("Jones must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong."). Accordingly, the ALJ's subjective symptom analysis as a whole is not patently wrong, and thus, a remand is not warranted on this basis.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.


Date: December 5, 2024             By:   *Margaret J. Schneider*
                                         Margaret J. Schneider
                                         United States Magistrate Judge